**Electronically Filed
Intermediate Court of Appeals
CAAP-14-0000697
01-MAR-2016
08:59 AM**

NO. CAAP-14-0000697

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


MHL, Plaintiff-Appellant,
v.
HJKL, Defendant-Appellee.


APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-D NO. 11-1-0899)


SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., Foley and Ginoza, JJ.)

Plaintiff-Appellant M.H.L. (Father) appeals from a Divorce Decree entered on March 4, 2014, in the Family Court of the First Circuit (family court).[1] The Divorce Decree granted a divorce between Father and Defendant-Appellee H.J.K.L. (Mother). On appeal, Father contends the family court abused its discretion in its (1) calculation of child support; (2) decision to award sole legal and physical custody of the couple's child (Child) to Mother, subject to Father's reasonable visitation; (3) calculation of spousal support; and (4) calculation of the equalization payment.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as

---

[1] The Honorable Catherine H. Remigio presided.

well as the relevant statutory and case law, we vacate the Divorce Decree to the extent the family court awarded Father zero Category 3 credit and the resulting equalization payment, but otherwise we affirm the family court.

"The family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion." In re Doe, 77 Hawai'i 109, 115, 883 P.2d 30, 36 (1994). It is Father's burden to demonstrate the family court erred. Bettencourt v. Bettencourt, 80 Hawai'i 225, 230, 909 P.2d 553, 558 (1995).

> The family court's [Finding of Facts (FOFs)] are reviewed on appeal under the "clearly erroneous" standard. A FOF "is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made." "'Substantial evidence' ... is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion."

> On the other hand, the family court's [Conclusions of Law (COLs)] are reviewed on appeal de novo, under the right/wrong standard. COLs, consequently, are "not binding upon an appellate court and are freely reviewable for their correctness."

> . . . [T]he family court's determination of what is or is not in a child's best interests is reviewed on appeal for clear error.

> Moreover, the family court "is given much leeway in its examination of the reports concerning a child's care, custody, and welfare, and its conclusions in this regard, if supported by the record and not clearly erroneous, must stand on appeal."

> . . . .

> "... It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of the evidence; this is the province of the trier of fact."

In re Doe, 95 Hawai'i 183, 190, 20 P.3d 616, 623 (2001) (ellipses in original, citations and brackets omitted).

**1. Child Support.** Father contends on appeal that the family court abused its discretion in awarding child support in the amount of $771 per month. While this appeal was pending, we granted Father's motion for temporary remand, pursuant to Hawai'i

Family Court Rules (HFCR) Rule 60 and <u>Life of the Land v. Ariyoshi</u>, 57 Haw. 249, 553 P.2d 464 (1976), to allow the family court to correct a mistake in the calculation of child support in the Divorce Decree. Upon temporary remand, the family court entered an order granting Father's motion to amend the Divorce Decree in order to correct its failure to include the ordered spousal support payments in the calculation of each party's gross income, and accordingly reduced the amount of child support Father was ordered to pay each month to $325. Because the family court corrected the exclusion of spousal support in its calculation of the parties' gross income, this issue has been resolved. None of Father's other arguments demonstrate that the family court abused its discretion in awarding child support.

Father's contention that Mother's imputed gross income should be higher is waived. The family court imputed $1,596 monthly gross income to Mother for purposes of child support, which appears to exclude her monthly dividend income. At trial, Father argued in his written closing arguments that Mother's income should be imputed at $1,500. His argument that Mother's imputed gross income should be higher is waived. <u>Hill v. Inouye</u>, 90 Hawai'i 76, 82, 976 P.2d 390, 396 (1998).

The family court did not abuse its discretion by including Father's rental and dividend income in his monthly gross income. The family court found in FOFs 68-71 that Father failed to disclose his current income in any trial exhibits, did not submit an updated Income & Expense Statement for trial, and did not disclose any income from investments or rental property in his Income & Expense Statements. Further, in FOF 88 the family court found that Father's non-disclosure of his actual income meant that his income was substantially understated. Father presents no discernible argument against these FOFs, and they are binding. <u>Doe IV v. Roe IV</u>, 5 Haw. App. 558, 568, 705 P.2d 535, 544 (1985).

In terms of the rental income, the family court calculated Father's rental income based on the couple's joint

2009 tax return (FOF 77). Father contends that it was not a regular and consistent source of income because his 2009 tax return actually reflects that the subject rental property was operating at a loss after deducting rental expenses such as repairs, taxes, and housing association dues. At trial, the family court questioned the numbers in the 2009 tax return, particularly about how the property could be operating at a loss. For example, in the family court's view, the purported monthly association dues of about $800 (i.e., part of the claimed expenses), were "preposterous." Further, in questioning Father about why the rent was so low, Father responded he "would not know" because his sister handled property management. Given Father's failure to disclose updated financial information, and the wide discretion afforded the family court to weigh evidence and judge the credibility of witnesses, the family court did not abuse its discretion in including the rental income in Father's gross income. In re Doe, 95 Hawaiʻi at 190, 20 P.3d at 623.

In terms of dividend income, at issue is dividend income from Father's Schwab One account. At trial, Father challenged the "regular and consistent" nature of the income because it varied from year to year, contending that his investment income should not be considered. The Hawaii Child Support Guidelines (HCSG) (2010) provide that investment income, including interest and dividend income, counts as gross income, even if it is not the same amount each year, as long as it is of a recurring nature. HCSG § IV(I)(1)(d). There was sufficient evidence that Father had dividend income of a recurring nature.

On appeal, Father contends that the family court should have averaged the interest and dividends received on the Schwab One account for the three years (2009, 2012, and 2013) for which evidence was adduced, rather than merely adopting the highest yielding year (2012) as Father's income (FOF 75). Father relies on three documents that reflect the amount of investment income earned in the respective years: the couple's joint 2009 tax return, a December 2012 account statement, and an August 2013 account statement. However, as noted above, Father did not

4

report his investment income to the family court. Further, Father himself adduced no evidence to show the value of his Schwab One investment income. The only exhibits addressing the value of Father's investment income were provided by Mother. Due to Father's repeated failure to provide information about his financial situation, the family court found that Father's actual income was substantially understated (FOF 88).

It was not an abuse of discretion for the family court to rely on the most recent <u>full</u> year of information regarding the Schwab One account prior to trial, 2012. The trial took place on October 21-22, 2013. By that time, the reported dividends on the 2009 tax return were four years stale, with no evidence of the investment income in 2010 or 2011. Also, the 2013 statement was issued in August of that year, thus not reflecting a full twelve months of dividends and interest. Father presented no argument that there was a change in his Schwab One account such that it would not produce similar investment income for the totality of 2013 as it did in 2012, especially considering that almost 90% of the investment income earned in 2012 on the Schwab One account was earned in December 2012. Given the lack of information provided by Father, it is understandable why the family court relied on the December 2012 account statement and adopted it as a reflection of Father's investment income.

**2. Custody.** Father has not demonstrated that the family court erred in awarding sole legal and physical custody of Child to Mother, subject to Father's visitation.

Father contends that the family court failed to provide adequate FOFs to support its custody decision.[2] The family court found that it was in the best interests of Child to award sole legal and physical custody to Mother, subject to Father's

---

[2] The family court concluded that "[a]fter careful consideration of the standards, considerations, and procedures contained in Hawaii Revised Statutes (HRS) § 571-46, the Court concludes that Mother shall be awarded sole legal and physical custody of the Child, and unsupervised visitation to Father." (COL 12)

5

visitation (FOF 64(b) & (c)). In its FOFs, the family court identified the enumerated considerations provided in Hawaii Revised Statutes (HRS) § 571-46 (Supp. 2012) for determining the best interests of the Child. FOFs 29-64[3] are "sufficiently comprehensive and pertinent to the issues to disclose to this court the steps by which [the family court] reached [the] ultimate conclusion on each factual issue[,]" Doe, 5 Haw. App. at 566, 705 P.2d at 543, indicate that the family court considered the requirements of HRS § 571-46(b) in determining the best interests of Child, and support COL 12. Further, the family court noted that the "findings and conclusions herein are a result, in part, of its consideration of the witnesses' demeanor, manner of testifying, and candor, in addition to the substance of each of their testimony[,]" and "[t]he Court's findings and conclusions herein are also based on the totality of the relevant and credible evidence." (FOF 64(d) & (e)). We defer to the family court's evaluation of credibility and weighing of evidence. In re Doe, 95 Hawai'i at 190, 20 P.3d at 623.

Moreover, the family court did not abuse its discretion in declining to adopt the custody evaluator's (CE) recommendation as contained in the CE's report and not continuing the parties' schedule utilized during the divorce proceedings. The CE's recommendation is not binding on the family court, and is only considered part of the evidence of the best interests of the Child. HRS § 571-46(a)(4); Sabol v. Sabol, 2 Haw. App. 24, 30,

---

[3]     Father contends that FOFs 62 and 63 are clearly erroneous because Father provided evidence he could alter his work schedule to permit weekday overnights, and, further, the FOFs are undermined by the court's visitation schedule, which requires Father to drop Child off at school on Mondays after his weekend visitation. However, Father testified that he had not admitted into evidence any documentary evidence from his employer that his work schedule could be altered, and also conceded that the custody evaluator had looked into the issue and found that any alteration of Father's start time would have to be renewed monthly. FOFs 62 and 63 are not clearly erroneous. Further, the family court's leniency in permitting the Sunday overnight, followed by Father dropping Child off at school on Monday, is easily explained as a temporary inconvenience to Child that would only require Child to wake up early on two school days per month and permit frequent, continuing, and meaningful contact with Father.

624 P.2d 1378, 1383 (1981) ("[T]he weight to be accorded to the court officer's opinion and recommendation is to be determined by the trial judge."). The family court has "much leeway" in its consideration of reports concerning child custody, and if its determinations are supported by the record, they must stand on appeal. In re Doe, 95 Hawai'i at 190, 20 P.3d at 623. Also, a court is not bound by any agreement between the parties. Yee v. Yee, 48 Haw. 439, 440-41, 404 P.2d 370, 371 (1965).

Further, the CE testified that, if, hypothetically, problems of poor communication between Mother and Father persisted, including disagreements about compliance with the parties timesharing agreement, and Father had enrolled Child in school without Mother's consent, the CE would alter his recommendation of joint legal custody to one that gave Mother sole legal custody, with input from Father on decisions regarding Child's care. The family court found that the couple had continued disagreements about timesharing, and thus it appears the family court adopted a version of the alternative plan proposed by the CE during trial (FOF 64).

The family court's determination of the best interests of Child is supported by the record and its determination as to Child's custody was not an abuse of discretion.[4]

**3. Spousal Support.** Father has not demonstrated that the family court abused its discretion in its award of transitional spousal support.

Throughout FOFs 85-109, and in particular FOF 108, the family court weighed the factors mandated by HRS § 580-47(a) (Supp. 2015). HRS § 580-47(a) provides in pertinent part that

---

[4] Father contends that the family court's FOFs do not support the award of sole legal and physical custody to Mother because the court, and the CE, found "insufficient evidence" that Father had committed family violence. However, this finding, FOF 64(a), merely indicates that the family court was not required to presume, pursuant to HRS § 571-46(a)(9), that it was not in Child's best interest to give Father sole or joint custody. Instead, the family court balanced the enumerated criteria and concluded that Mother should be awarded sole custody, subject to Father's visitation, in part based on the court's findings that Father had physical and verbal incidents, albeit not rising to the level of family violence.

> in the event the court determines that support and maintenance shall be ordered for a specific duration wholly or partly based on competent evidence as to the amount of time which will be required for the party seeking support and maintenance to secure adequate training, education, skills, or other qualifications necessary to qualify for appropriate employment, <u>whether intended to qualify the party for a new occupation, update or expand existing qualification, or otherwise enable or enhance the employability of the party</u>, the court <u>shall order support and maintenance for a period sufficient to allow completion of the training, education, skills, or other activity, and shall allow, in addition, sufficient time for the party to secure appropriate employment</u>.

(Emphasis added.) Therefore, it was not error to permit Mother to qualify for new employment. Further, Father's arguments are unconvincing that Mother's experience working as a nurse in South Korea six years before she met Father, working as a Korean tour leader during that six-year period prior to meeting Father and moving to Honolulu, and her brief work for six months in 2009 as a home nurse in Honolulu, constitutes her having an established career, "abandoning" appropriate employment, or that she could be self-sufficient without obtaining further training, education, skills, or other qualifications. The family court found that Mother earned $12 per hour working as a tour guide[5] and was currently attending community college (FOF 108(a)(7)(a)). This finding is not challenged and is binding. <u>Doe</u>, 5 Haw. App. at 568, 705 P.2d at 544.

The family court also did not abuse its discretion in declining to consider monetary gifts that Mother received from Paternal Grandfather in its consideration of Mother's ability to meet her needs post-divorce. Unlike in <u>Sussman v. Sussman</u>, 112 Hawai'i 437, 146 P.3d 597 (App. 2006), the family court here found (FOF 92) that Mother credibly testified that she would establish her own residence and rely on spousal support and property division while she attends school, while Paternal Grandfather would only continue to pay for Child's education-related expenses post-divorce (FOF 39). Therefore, there is

---

[5] Mother testified that she worked 6 hours every Saturday, and 3 hours every other Sunday.

evidence in the record that Paternal Grandfather would not support Mother post-divorce. Cf. Sussman, 112 Hawai'i at 440, 146 P.3d at 600. We defer to the family court's evaluation of credibility and weighing of evidence. In re Doe, 95 Hawai'i at 190, 20 P.3d at 623.

The family court's FOF 107, that Father has the ability to pay spousal support, was not clearly erroneous. As noted above, Father failed to disclose his current financial information to the family court, thus his income was substantially understated (FOF 88).[6] Further, Father's argument regarding his ability to pay spousal support is, in part, based on the family court's initially erroneous calculation of child support. The family court corrected the calculation of child support upon temporary remand, reducing the monthly child support payment by more than one-half. Father did not file a supplemental brief after the family court amended the child support payment. In any event, considering the reduced amount of child support, the family court's FOF 108(a)(11)(a), that Father could afford to pay $2,338 per month in transitional spousal support, is supported by substantial evidence and is not clearly erroneous.

Lastly, the family court did not err by considering Father's contingent interest in Paternal Grandfather's irrevocable trust as part of his assets. Review of FOF 108 reveals that the family court only generally considered Father's contingent interest in terms of his entire financial resources, factor (1) under HRS § 580-47(a). When the family court specifically considered the amount of spousal support Father could pay, the court appears to have limited its consideration to actual income. Father cites no authority that indicates that the

---

[6] Father also reiterates his argument that the family court incorrectly computed Father's monthly income based on its consideration of monthly rental profits and investment income. As previously discussed above, Father's contention that the family court abused its discretion in this regard is without merit.

family court abused its discretion in this regard.

**4. Equalization Payment.** Father contends that the family court abused its discretion by declining to award Father a Category 3 credit for a portion of his Schwab One account. Father contends that he deposited a $136,254 gift or inheritance received from Paternal Grandmother's revocable trust after Paternal Grandmother's death in 2008 into the investment account.[7] We agree with Father to the extent that the family court erred in awarding Father no credit for a gift or inheritance from Paternal Grandmother.

The family court appears to have awarded no Category 3 credit because Father failed to disclose the claimed credit until trial, failed to provide an updated Asset & Debt Statement, did not submit any trial exhibit showing Father received an inheritance from Paternal Grandmother or that he deposited the inheritance into his Schwab One account. (FOF 113(e)).

However, the evidence indicates that Father did inherit money from Paternal Grandmother such that the family court should not have awarded him zero Category 3 credit. See, Kodama v. Kodama, No. CAAP-11-0000641, 2014 WL 7451246, 134 Hawaiʻi 305, 339 P.3d 1106 , at *14 (App. 2014)(mem.), cert rejected, No. SCWC-11-0000641, 2015 WL 1648194 (Apr. 13, 2015), 2015 WL 3384470 (May 22, 2015). Father and Paternal Grandfather both testified that Father had received an inheritance from Paternal Grandmother upon her death. Further, it appears that around $200,000 was withdrawn from Paternal Grandmother's revocable trust in August 2008, which would be consistent with a distribution after Paternal Grandmother's death. This is generally in line with Paternal Grandfather's testimony that he believed Father had received around $90,000 from Paternal Grandmother's trust, which

---

[7] In his reply brief, Father asserts that the family court erred in considering Father's interest in the RDLIT as a valid and relevant consideration in deviating from the Partnership Model. Father did not raise this argument in his opening brief, and it is waived. In re Hawaiian Flour Mills, Inc., 76 Hawaiʻi 1, 14 n.5, 868 P.2d 419, 432 n.5 (1994).

was deposited in Father's account.

We conclude that the family court erred in denying Father any Category 3 credit.  While the family court was entitled to exercise its discretion in the valuation of the Category 3 claim, it should not have awarded Father no credit. On remand, we direct the family court to use the available evidence to determine a reasonable value for Father's Category 3 claim.

Therefore, IT IS HEREBY ORDERED that the Divorce Decree entered on March 4, 2014, is vacated to the extent that it awards nothing for Father's Category 3 claim and the resulting equalization payment.  In all other respects, the Divorce Decree and the amendments made to the Divorce Decree as part of the "Order Re Motion to Amend the Divorce Decree Filed March 4, 2014" filed September 15, 2015, in the Family Court of the First Circuit, are affirmed.

DATED:  Honolulu, Hawai'i, March 1, 2016.


On the briefs:

Peter Van Name Esser,
for Plaintiff-Appellant.

Thomas E. Crowley,
for Defendant-Appellee.

Chief Judge

Associate Judge

Associate Judge